UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
KAREN MCFADDEN,

                          Plaintiffs,

      -against-

CLARKESON RESEARCH GROUP,
INC.,

                          Defendants.

------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-0112

(Wexler, J.)

APPERANCES:

FRANK & ASSOCIATES, P.C.
BY: STEPHANOS ZANNIKOS, ESQ.
Attorney for Plaintiffs
500 Bi-County Boulevard, Suite 112N
Farmingdale, NY 11735

MILMAN LABUDA LAW GROUP, PLLC
BY: JOSEPH M. LABUDA
3000 Marcus Avenue, Suite 3W3
Lake Success, New York 11042

WEXLER, District Judge

      Plaintiff Karen McFadden, ("Plaintiff" or "McFadden") commenced this action seeking payment of overtime wages, and other relief pursuant to the Fair Labor Standards Act ("FLSA") and New York State law. Named as Defendant is Plaintiff's former employer, Clarkeson Research Group, Inc. (the "Defendant Company" or "Clarkeson"). Presently before the court is Clarkeson's motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") to dismiss, and to compel Plaintiff to arbitrate her dispute with the Defendant Company.

1

## BACKGROUND

I. <u>The Parties, The Pleadings, and Prior Proceedings</u>

Plaintiff is a former employee of Clarkeson, a company engaged in the bond brokerage business. Clarkeson is a branch of Sterne Agee Leach Financial Services, Inc. ("Sterne Agee"). Brian Bornstein, a Clarkeson director submitting an affidavit in support of the motion before the court, states that both he, and Stern Agee are securities dealers registered with the National Association of Securities Dealers ("NASD").

Plaintiff's complaint alleges that McFadden was employed by Clarkeson as an administrative assistant from September 2000 through May 9, 2008. Her duties are described in the complaint as "assisting her supervisor to set up accounts, transfer funds into trade accounts and other administrative duties." At Plaintiff's deposition, she testified that she "did everything in the office." She described those duties to include preparing paperwork to set up new accounts, ensuring that all trades were properly settled, paying bills, answering phones and confirming brokers' trades.

This case was commenced by a complaint dated January 12, 2009. An answer was filed in March of 2009. Automatic disclosures were exchanged in early May 2009, and on May 11, 2009, the parties attended a scheduling conference before the assigned Magistrate Judge. On May 28, 2009, Plaintiff filed an amended complaint, which was answered by Defendant on June 4, 2009. Neither the answer to the complaint, nor to the amended complaint, assert an agreement to arbitrate as a defense.

Document discovery began in August of 2009, when Plaintiff served Defendant with requests to produce documents and interrogatories. The parties thereafter either responded to requests, or engaged in motion practice before the Magistrate Judge to

2

determine the propriety of responses and objections. In October of 2009, the Magistrate Judge issued an order outlining the parties' obligations with respect to ongoing document discovery. A second order regarding discovery was issued by the Magistrate Judge in December of 2009. Plaintiff's deposition was taken on December 30, 2009. Shortly thereafter, Defendant requested that this court hold a pre-motion conference with regard to a proposed motion to dismiss on the ground that Plaintiff agreed to arbitrate this dispute. The Magistrate Judge agreed to stay the deposition of the Defendant, and this motion followed.

II. The Motion

Defendant moves to dismiss, and compel Plaintiff to arbitrate the claims raised herein. In support of the motion, Defendant relies upon a document signed by McFadden in 2001, when she began working for the Defendant Company. That document, which is customarily signed by many employed in the securities industry, is the "Uniform Application for Securities Industry Registration or Transfer." The form is commonly known, and referred to herein, as a "Form U-4." As detailed below, Form U-4 contains a broadly worded agreement to arbitrate disputes arising, inter alia, between Plaintiff and her employer.

While Plaintiff does not dispute that her signature appears on the Form U-4, she argues that there was never an agreement to arbitrate because she never completed the form by indicating the identity of a particular securities self regulatory organization ("SRO") with which she would be registering. She further argues that because she never took a licensing examination, or intended to become, a registered securities broker she is not bound by the terms of the Form U-4. In addition to arguing that there was never an

3

agreement to arbitrate, Plaintiff argues that the Defendant Company has waived the right to arbitrate by its prolonged participation in this lawsuit. After outlining relevant legal principals, the court will turn to the merits of the motion.

## DISCUSSION

I. The Federal Arbitration Act

The Federal Arbitration Act ("The Act" or the "FAA") governs this matter, and was enacted to promote the enforcement of private agreements to arbitrate. See Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir. 2004); Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 294 (2d Cir.1999); Infinity Indus., Inc. v. Rexall Sundown, Inc., 71 F. Supp.2d 168, 169 (E.D.N.Y. 1999). Section 4 of the Act allows a party to petition a court to compel arbitration, and empowers the court to hear the parties, and "upon being satisfied" that the making of the agreement to arbitrate is not at issue, to direct the parties to proceed to arbitration in accordance with the terms of their agreement. See 9 U.S.C.A § 4.

A court faced with a request to arbitrate addresses two questions: (1) whether the parties have agreed to arbitrate and if so, (2) whether the scope of the agreement to arbitrate encompasses the claims asserted. Chelsea Squares Textiles, 189 F.3d at 294; North Ferry Co., Inc. v. Local 333, 338 F. Supp.2d 430, 433 (E.D.N.Y. 2004). A party objecting to the existence of the agreement to arbitrate may raise the same objections available as when denying the existence of a contract. 9 U.S.C. §2. Such matters are resolved pursuant to state contract law. Chelsea Square Textiles, 189 F.3d at 295-296. When deciding whether the parties have agreed to submit a particular question to

4

arbitration, the court answers only the question of arbitrability, and does not rule on the merits of the dispute. AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649-650 (1986); New York Health and Human Serv. Union, 1199/SEIU, AFL-CIO v. NYU Hosps. Center, 343 F.3d 117, 119 (2d Cir. 2003).

A waiver of arbitration is not to be lightly inferred. PPG Industries, Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107 (2d Cir. 1997). Nonetheless, a party may be deemed to have waived the right to arbitrate if it had engaged "in protracted litigation that results in prejudice to the opposing party." S & R of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998) (citation omitted). Factors to consider when determining whether waiver should be found include: (1) time between commencement of the lawsuit and the request seeking arbitration; (2) the amount of litigation engaged in, and (3) prejudice to the party opposing arbitration. Id at 83. When considering the amount of litigation engaged in, courts consider the amount of pre-trial discovery, motion practice, and whether the parties have engaged in discovery procedures not available in arbitration. See Brown v. Coca-Cola Enterprises, Inc., 2009 WL 1146441 *10 (E.D.N.Y. 2009); W & S Erectors, Inc. v. Metropolitan Steel Industries, 2000 WL 533094 * 3 (E.D.N.Y. 2000).

Protracted litigation, standing alone, is not sufficient to support a finding of waiver of arbitration. Instead, the party resisting arbitration must show prejudice resulting from its participation in litigation. See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir. 1995); see also PPG Industries, 128 F.3d at 107-08 (neither passage of time, nor incurring of litigation expenses are, without more, sufficient to support waiver).

5

## II. Disposition of the Motion

### A. The Agreement to Arbitrate: Factual Background

There is no question that Plaintiff signed Form U-4. There is also no question that Plaintiff signed that form as a condition of her employment. Plaintiff argues that she never agreed to arbitrate because she never indicated the identity of the particular securities self regulatory organization ("SRO") with which she would be registering. She further argues that as an administrative assistant, she never intended to become a registered securities broker, and therefore is not bound by the terms of the Form U-4. To understand and rule upon Plaintiff's argument, it is necessary to describe more fully the terms of the Form U-4, as well as other documents filed with the NASD that are relevant to Plaintiff's employment.

As noted, the Form U-4 is entitled "Uniform Application for Securities Industry Registration or Transfer." It is the form that must be completed by individuals who are in the process of becoming registered with a securities industry SRO. The NASD is an SRO. As such, it is registered with the United States Securities and Exchange Commission, and is required to regulate the over-the-counter market, securities firms, and those engaged in the sale of securities. See generally Desiderio v. National Association of Securities Dealers, Inc., 2 F. Supp.2d 516, 518 (S.D.N.Y. 1998).

Paragraph 2 of the Form U-4 states, "I apply for registration," with a jurisdiction and SRO. As to which particular SRO the individual signing the Form U-4 is registering, the form signed by Plaintiff makes reference to "Item 11." Item 11 is a list of various SRO's with which the person signing the Form U-4 will be seeking to register. Once an individual completing the Form U-4 indicates to which SRO application will be made, it

6

is the rules of that SRO that apply to the agreement. Thus, the individual signing the U-4, and indicating a particular SRO, agrees to be subject to the jurisdiction of, and to be bound by all "requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by," that SRO. With respect to dispute resolution, the Form U-4 states:

> I agree to arbitrate any dispute. Claim or controversy that may arise between me and my firm . . . that is *required to be arbitrated under the rules, constitutions, or by-laws of the SROs* indicated in Item 11 . . . ." (Emphasis added).

Defendant argues, and Plaintiff does not dispute, that she signed the Form U-4 as a condition of her employment. While Plaintiff never indicated a particular SRO in her Form U-4, it is clear that her employer was registered with the NASD at all relevant times.[1] After Plaintiff completed the Form U-4, she was fingerprinted, and her fingerprints were forwarded for filing to the NASD. The fingerprint card submitted to the NASD is before the court and notes, on its face, that it is to be sent to that organization. After submission of Plaintiff's fingerprints to the NASD, Plaintiff received a Central Registration Depository ("CRD") number from NASD. Plaintiff's CRD filing history classifies Plaintiff as "NRF," which means that Plaintiff's NASD status is a "non-registered fingerprint." Thus, while Plaintiff's fingerprints were forwarded to NASD, she was never considered by that entity to be a registered broker. Instead, she was classified as "NRF."

Against this factual backdrop, Plaintiff argues that she is not bound by the arbitration provision of the Form U-4 because neither NASD, nor any other SRO is

---

[1] The NASD has since merged with the Financial Industry Regulatory Authority ("FINRA"). The court here refers to the relevant SRO as the NASD.

7

identified in the form, and she never actually applied for the registration contemplated by that form. Defendant argues that Plaintiff's signature on the Form U-4 is sufficient to bind her to that form's arbitration provision, and the omission of specific reference to the NASD is a mere technicality. Moreover, it is argued by Defendant that Plaintiff's participation in the securities industry, along with submission of her fingerprints to NASD, and its issuance to her of a CRD number, is sufficient for the court to find that NASD is the SRO that should have been indicated in the Form U-4.

B. The Agreement to Arbitrate: Analysis

Arbitration is a matter of contract, and it is the law of the State of New York that determines whether Plaintiff has entered into an agreement to arbitrate. Under New York law, a contract is formed when there is offer and acceptance, consideration, mutual assent, and an intent to be bound. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004); McNamara v. Tourneau, Inc., 464 F. Supp.2d 232, 237 (S.D.N.Y. 2006). The issue of mutual assent "considers whether there has been a meeting of the minds between the parties on all essential terms of the agreement." Aderman v. Niagara Wheatfield Cent. School Dist., 2003 WL 21382894 *2 (W.D.N.Y. 2003); see Hines v. Overstock.com, Inc., 668 F. Supp.2d 362, 366 (E.D.N.Y. 2009).. Thus, a contract is formed when all of the contracting parties express an intent to be bound, and where all of the essential terms of the agreement have been spelled out. International Minerals and Resources, S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir. 1996); see Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp.2d 405, 412 (S.D.N.Y. 2009) (party alleging existence of contract must show facts surrounding contract formation including major contractual terms, and mutual assent); International Paper Co. v. Suwyn, 966 F. Supp. 246, 254

8

(S.D.N.Y.1997) (contract enforceable if there is a "meeting of the minds between the parties regarding material elements of the agreement").

When determining whether additional terms are essential to find contract formation, the court may consider evidence beyond the face of the contract. Shann v. Dunk, 84 F.3d 73, 79 (2d Cir.1996). The court has flexibility to consider the "subject of the agreement, its complexity, the purpose for which the contract was made, the circumstances under which it was made, and the relation of the parties." Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 548 N.Y.S.2d 920, 923 (1989). Further, the court should consider the framework of the contract rather than considering the disputed terms in isolation. Personalized Media Communications, L.L.C. v. StarSight Telecast, Inc., 2000 WL 1457079 *3 (S.D.N.Y. 2000).

Application of the contract law stated above leads the court to conclude that Plaintiff's signature on the Form U-4 is sufficient to show assent to all of the essential terms of that agreement, including the agreement to arbitrate. While it is true that the Form U-4 does not indicate a particular SRO to which Plaintiff intended to apply for registration, the court does not find this missing term to be fatal to the contract's enforcement. It is clear, especially from the submission of the fingerprint card, that Plaintiff would be bound by the rules and regulations of the NASD. The fingerprint card which was signed by Plaintiff, indicates that it was to be forwarded to that organization. Additionally, the issuance to Plaintiff of a CRD number with NASD is strong evidence that NASD is the SRO that the parties intended to be referenced in the Form U-4.

The court notes that its ruling is not dependent on any finding that Plaintiff intended to take the examination necessary to become a registered broker. The parties

have taken different factual positions on this matter which cannot be resolved in the context of this motion. Plaintiff's intent with respect to becoming registered, however, is not determinative of the issue of enforcement of the Form U-4. Her signature, and submission of information to the NASD is sufficient to support a finding of a contractual meeting of the minds as to the terms of the document she signed. See Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60 (2d Cir. 1996) (employer bound to the Form U-4 by virtue of its membership in the NASD and individual is "bound by the Form U-4 because his signature manifests his assent"); see also Desiderio, 2 F. Supp.2d at 519 ("[e]xecution of the Form U-4, inherently represents an agreement to arbitrate . . . ."); see also Herko v. Metropolitan Life Ins. Co., 978 F. Supp. 141, 147 (W.D.N.Y. 1997) (holding execution of Form U-4 to be contractual consideration given in exchange for consideration of Plaintiff's application for membership in the NASD, despite failure to pass examination); accord Foley v. Presbyterian Ministers' Fund, 1992 WL 63269 *1 (E.D. Pa. 1992) (plaintiff who failed NASD securities registration test held nonetheless to be bound by arbitration provision of Form U-4).

The court is aware of cases to the contrary upon which Plaintiff relies, and notes that they were decided by courts outside of this circuit and additionally, are factually distinguishable. For example, in Sesito v. H.J. Meyers & Co., 1997 WL 160280 (N.D. Tex. 1997), heavily relied upon by Plaintiff, the court held that a receptionist who failed to indicate the identity of a particular SRO in her Form U-4 was not bound to arbitrate her employment-related dispute. Unlike the facts here, there was no indication in Sesito that any document was ever submitted to an SRO, nor was there any indication that the plaintiff was issued a CRD number. See also Bradford v. J.C. Bradford & Co., 181 B.R.

910, 913-14 (Bankr. E.D. Tenn. 1995)(plaintiff not required to arbitrate where Form U-4 was incomplete, unfiled and there was no evidence that plaintiff was issued a CRD number). Where, as here, the party executing the Form U-4 also submits fingerprints to an SRO and maintains a CRD number, there are sufficient facts to support the finding of a contractually enforceable agreement to arbitrate.

For the foregoing reasons, the court holds that Plaintiff entered into an agreement to arbitrate the dispute raised in this litigation. The court turns to consider whether Defendant has waived its right to arbitrate.

C. <u>Waiver</u>

As noted, waiver of the right to seek arbitration is not to be lightly inferred, and can be found only where there is a finding of protracted litigation and prejudice. Delay in seeking arbitration, standing alone, does not result in waiver unless there is also prejudice to the party opposing arbitration. <u>Leadertex</u>, 67 F.3d at 25. The Second Circuit has defined prejudice as referring to "the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." <u>PPG Industries, Inc. v. Webster Auto Parts, Inc.</u>, 128 F.3d 103, 107 (2d Cir. 1997); <u>see also</u> <u>Latona Trucking</u>, 159 F.3d at 83-84. A finding of waiver is a fact-specific determination that is decided while keeping in mind "a healthy regard for the policy of promoting arbitration." <u>Leadertex</u>, 67 F.3d at 25.

Plaintiff argues that she will be prejudiced if arbitration is compelled because Defendant has availed itself of pretrial disclosure that is not generally available at

11

arbitration. In particular, Plaintiff argues that in addition to paper discovery, she has submitted herself to deposition, whereas Defendant has not.

In response to Plaintiff's argument, Defendant states that if this court grants the motion to compel arbitration, it will appear for deposition, whether or not required by the arbitral forum. Thus, Plaintiff can claim no prejudice as a result of the taking of her deposition. While the parties have engaged in, and appear to have completed, document discovery, no substantive motions have been made. Plaintiff cannot therefore claim prejudice arising out of any binding legal decision rendered by this court. Although Plaintiff argues that she is prejudiced by her response to Defendant's document demands, Defendant points out that while McFadden produced few responsive documents, it has produced many documents to Plaintiff. Thus, the exchange of documentary discovery does not compel a finding of prejudice. Despite the passage of time and Defendant's participation in the litigation process, the court holds that Plaintiff has failed to show the prejudice necessary to support a waiver of arbitration.

## CONCLUSION

For the foregoing reasons, the court grants the motion to compel arbitration. The Clerk of the Court is directed to terminate the motion and to close the file in this matter.

SO ORDERED.

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       May 18, 2010

12